[No. 11401. In Bank. — October 23, 1888.]

S. H. BROWN, RESPONDENT, v. J. Z. ANDERSON, APPELLANT.

CONTRACT TO BUY — WARRANTY OF QUANTITY. — Where a party contracts to buy the crop of fruit "that may grow or be produced" in a certain year, there is no warranty by the seller that the crop shall be of any particular quantity.

ID. — MEANING OF WORD "YEAR." — The word "year," when used in a contract, does not necessarily mean a calendar year. Its meaning is to be determined from the connection in which it is used, and from the subject-matter of the contract. Instance.

ID. — JUDICIAL NOTICE — SEASONS — GATHERING OF CROPS. — The court will take judicial notice that the end of the calendar year is not the season for the gathering of fruit crops.

APPEAL from a judgment of the Superior Court of Santa Clara County.

The facts are stated in the opinion.

*T. H. Laine*, and *Laine & Johnston*, for Appellant.

*J. F. Wendell*, for Respondent.

HAYNE, C.—Action to recover a balance due on a contract for the sale of fruit. The material portions of the contract were as follows:—

"I have sold to J. Z. Anderson of San José all the prunes and other fruits that may grow or be produced during the year 1884 upon about fifty acres of land purchased by me of A. G. Higgins, and situate in Santa Clara County, for the full sum or price of $2,666.23, payable as follows: $100 on this date, $900 on or before January 1, 1884, *and the balance when the crop is taken off, at the end of the year.* . . . . I am to cultivate and take good care of the trees, and Anderson is to have the privilege of entering upon said land for the purpose of picking, drying, and caring for the fruit, and removing the same."

The defendant made the first payments, but on July 30, 1884, gave written notice that he rescinded the contract. This attempted rescission was based upon the charge that the plaintiff had not performed his covenant to take good care of the trees. But the finding is, that this charge was not true,—that the plaintiff "properly cultivated" the orchard, and "well and skillfully pruned" the trees. The court further finds that the crop "proved an almost total failure. There should have been in an ordinary season eight tons of prunes. There was not in fact over two tons." The defendant never picked or cared for the fruit, or removed any part thereof, except a few cherries. The action was commenced on October 29, 1884, to recover the last payment. The trial court

rendered judgment in favor of the plaintiff; and the defendant appeals from the judgment upon the findings.

We think that the judgment was right. It is apparent that there was no undertaking on the part of the plaintiff that the crop should be of any particular quantity. The contract was simply that defendant should have all the fruit "that may grow or be produced during the year 1884." He took his chances as to quantity. And it is not necessary to consider whether there was any implied warranty as to quality, because no inferiority of quality was shown. For all that appears to the contrary, the two tons of prunes, of which the finding speaks, may have been of excellent quality. If this were not the case, the defendant should have proved it. But the fact does not appear. And the learned counsel for the appellant makes no point in relation to inferiority of quality in his brief. The case, therefore, stands thus: The plaintiff did what he was required to do by the contract, and the defendant refused to receive the crop, although it was what he had bargained for.

It is argued for the appellant, however, that the action was premature; that the contract provided that the payment sued for was to be made "when the crop is taken off, at the end of the year"; and that the crop was not taken off, and that the "end of the year" had not arrived when the suit was brought. But the provision was, that the *defendant* should pick, dry, and care for the fruit, and remove the same. It was his duty to take off the crop, and it is perfectly clear that he cannot rest his defense upon his own neglect of duty. The question then is, whether the "end of the year" had arrived when the suit was brought. In this regard the argument for the appellant assumes that the contract means a "calendar" year. But we do not think so. A year is a period of time; and it does not necessarily mean the period commencing with the first day of January and ending with the thirty-first day of the succeeding December.

When the term is used in a contract, its meaning is to be determined from the connection in which it is used, and the subject-matter of the contract. (*Knode* v. *Baldbridge*, 73 Ind. 54.) In the present case the term cannot mean a calendar year, because the evident meaning is that the crop is to be taken off (by which we understand that it was to be gathered) "at the end of the year"; and the court will take notice that the end of the calendar year was long after the season for gathering the crop. As remarked by the counsel for the respondent, the parties could not have intended such an untimely "taking off." And it would be an entirely strained and uncalled for construction to say that they intended that the crop should be gathered and left upon the premises until the end of the calendar year. If the end of the calendar year was not intended, it is unnecessary to inquire whether the parties meant a year from the date of the contract or the end of the cropping year or fruit season. In either view the action was not premature.

We therefore advise that the judgment be affirmed.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.