## FRANK v. McMEEKAN.
### Civil Action No. 3600.

District Court, E. D. New York.

Aug. 3, 1944.

Goldwater & Flynn, of New York City (Monroe Goldwater and James L. Goldwater, both of New York City, of counsel), for plaintiff.

Walter F. O'Malley, of New York City (George O. Lehmann, of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

On plaintiff's motion for summary judgment, the parties have stipulated that there is no issue of fact whatever between them and that the Court may use the depositions, exhibits and minutes of a previous trial of this action in the same manner as though they had been offered anew on this motion.

The action is instituted by plaintiff in his own behalf and as the representative of five other former employees of defendant to recover unpaid overtime compensation, liquidated damages and attorneys' fees under Sections 7 (a) and 16 (b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

Defendant is the owner and in control of a 10-story and basement loft building at 327 East 29th Street, in the Borough of Manhattan. Plaintiff and those he represents were building maintenance and operating employees of the defendant, having the usual duties of looking after the heat, hot water, light and fire sprinkler systems, of keeping the premises in repair and clean condition, of operating elevators for passengers and materials, and of doing whatever work of that nature was necessary for the general service of the building.

The number of hours worked by plaintiff and those he represents during the period involved, and the wages paid, are not in dispute, and simple computation will determine the amount due the plaintiff if he is entitled to judgment herein. The defendant's main contention is that these employees are not covered by the Fair Labor Standards Act and are thus not entitled to its benefits. If it be determined that the Act does apply to them, defendant offers a number of affirmative de-

fenses which he claims preclude recovery in any event.

■ The Fair Labor Standards Act, by its terms, is stated to apply to employees who are "engaged in commerce or in the production of goods for commerce" (Sections 6 and 7, 29 U.S.C.A. §§ 206, 207) and that a person is so engaged if he is employed "in any process or occupation necessary to the production" of such goods (Section 3 (j), 29 U.S.C.A. § 203 (j). It has been authoritatively established to the exclusion of original consideration on this motion that labor of the character performed by plaintiff and those he represents is employment in an "occupation necessary to the production" of goods and that if the production by the tenants is of goods for interstate commerce, the employees of the building are covered by the Act (Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638). It is the argument of the defendant here that in the Kirschbaum case the tenants of the building were "principally engaged in the production of goods for interstate commerce" (page 519 of 316 U.S., page 1118 of 62 St.Ct., 86 L.Ed. 1638), whereas that prerequisite to the conclusion reached is not present in this case. He interprets "principally" to mean well over 50%, the percentage of interstate business to the whole in the Kirschbaum case being over 80%.

In both these assertions, the defendant errs. The Supreme Court did not attempt to define the limits of the Fair Labor Standards Act. Unquestionably the Act does not apply to every person who is a service employee in a building where some interstate commerce is carried on by the tenants. But what percentage of an employee's activities would need to be devoted to the service of tenants engaged in the production of goods for interstate commerce was not stated by the Court, nor were any tests outlined for the ascertainment of the presence of the required percentage in any particular case. It had been conceded in the Kirschbaum action that the tenants were "principally" engaged in interstate commerce but that was not made a condition to the decision that the Act applied to the employees.

■ It is undoubtedly the judicial consensus "that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce". Walling v. Jackson-ville Paper Company, 317 U.S. 564, 567, 63 S.Ct. 332, 335, 87 L.Ed. 460. In this case, which did not concern maintenance employees, it was said that (page 572 of 317 U.S., page 337 of 63 S.Ct., 87 L.Ed. 460): "If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established * * * he is covered by the Act." In view of the interpretation of the legislative intent which has been adopted by the Supreme Court, the Act must necessarily be liberally construed in favor of employees. Judge Rifkind has held in a recent case in the Southern District of New York that "a substantial part" means the opposite of insubstantial or immaterial and may be less than 50%. Berry v. 34 Irving Place Corp., D.C., 52 F.Supp. 875, 879.

■ What test is to be used in ascertaining what percentage of an employee's activities relate to goods which move in interstate commerce? Obviously it is impossible to separate the activities themselves where they are of the nature of those here involved. However, it is also apparent the services bear a direct relation to the tenants for whom they are performed, and this is the only practicable way of measuring them. Sometimes the floor space is used as the yardstick. Applying this method alone, it appears from Plaintiff's Table II that the percentages of space occupied by tenants engaged in manufacture for interstate commerce to the total rentable area during the five years involved in this dispute ranged from 51.7 to 62.1 and averaged 55.9 for the period. However, the Act defines "production of goods" to include "handling" (Section 3 (j) and tenants who distribute goods in interstate commerce, even though they are not manufactured on the premises, should be included. When this is done, the percentages for the five years rise to a range from 68.9 to 82.8 and average 76.5, which is "a substantial part" of the whole even by the defendant's definition.

■ While it is realized that a tenant occupying a large portion of the floor space might do only a small volume of interstate business, and that the presence of such a factor would make this method unreliable, there is no such situation here. Looking to the percentage which the interstate business of the tenants bore to their total business (Plaintiff's Table III, eliminating Regensburg & Sons for the reason that they

were tenants for only two months, an insignificant part of the period involved), it appears that of a total annual volume of $1,354,000, $338,525 was interstate, or a percentage of 25. This is certainly not an immaterial or insubstantial proportion. Considering the two tests together, the plaintiff and those he represents are covered by the Fair Labor Standards Act and are entitled to its benefits.

As to the defendant's counterclaim for reformation of the employment contract, and the defenses asserting estoppel and the alleged failure of plaintiff to sustain the burden of proof, the questions determinative of the issues have been decided and adequately discussed in the recent cases of Greenberg v. Arsenal Building Corp., D.C., 50 F.Supp. 700, affirmed per curiam 2 Cir., 144 F.2d 292, and Berry v. 34 Irving Place Corp., supra.

Plaintiff's motion for summary judgment is granted and defendant's motion for like relief is denied. Settle order on notice, incorporating the unpaid wages as submitted, together with liquidated damages in an equal amount, costs and an allowance of 25% for counsel fees.