[Civ. No. 7344.   Third Dist.   Sept. 6, 1947.]

FRANCIS WILLIAM CUTTS, M. D., Appellant, v. ARCHIBALD B. TINNING et al., Respondents.

James H. Phillips for Appellant.

Fred N. Howser, Attorney General, and Wilmer W. Morse, Deputy Attorney General, for Respondents.

ADAMS, P. J.—Appellant herein, on or about April 26, 1946, filed in the Superior Court of the County of Sacramento, a petition for a writ of mandate to be directed to the members of the California State Personnel Board, the Director of the Department of Mental Hygiene, the State Controller, the State Treasurer, and the Director of Finance. Attached to the petition and made a part thereof was an "Agreed Statement of Facts" which had been filed with the Personnel Board on March 29, 1946, and which statement contained a recitation of facts upon which petitioner based his petition and his right to the relief prayed.

The recited facts are as follows: Petitioner, on February 3, 1941, held the permanent civil service position of physician and surgeon at Camarillo State Hospital. He was also in the Medical Corps Reserve of the United States Army, holding the rank of captain. On or about that date he was ordered to active duty, whereupon he took a leave of absence from the Camarillo State Hospital and entered upon active duty with the United States military forces. Prior to that time, and on December 12, 1940, he had taken and qualified under a promotional examination for Assistant Medical Director, Department of Institutions, and had been placed first on the promotional eligible list. On September 17, 1941, he was certified for appointment as Assistant Medical Director at Stockton State Hospital. On October 4, 1941, he obtained a leave of absence from the Army, "for the purpose of accepting appointment to said position," but was not otherwise relieved from military duty. While on such leave he performed the duties of Assistant Medical Director at the Stockton Hospital until October 13, 1941, when his leave terminated. Report of his appointment was made to the Personnel Board, and entered upon the official roster. On October 7th, he requested of the Department of Institutions a leave of absence from his position, effective October 13th, on the ground that he was "ordered to military duty." The leave was approved by the Department of Institutions on October 10th and filed with the Personnel Board, which approved it on October 21st. After his return to military service he performed no services for the state. On or about October 8, 1945, his military service terminated and he returned to and was reinstated in his position at Camarillo.

In the meantime, and on November 16, 1942, the Personnel Board had cancelled his appointment of October 4, 1941, as

Assistant Medical Director at the Stockton State Hospital, on the ground that as an officer on active duty with the United States Army he was ineligible for same; but on July 19, 1943, he had been again certified from the same promotional list for Assistant Medical Director at the Stockton Hospital, and on August 2, 1943, had been appointed to fill the position, ''such appointment to take effect upon his return to State service in accordance with Section 96.6 of the State Civil Service Act as added by Chapter 395, of the Statutes of 1943.''

Immediately after petitioner's reinstatement at the Camarillo Hospital, his appointment at the Stockton Hospital was made effective and he began his duties at the latter place, performing them until February 28, 1946, at which time he and three other employees of the Department of Mental Hygiene (formerly the Department of Institutions) were laid off, such layoffs being necessary because of the reinstatement of employees after discharge from military service, as provided for in section 19390 of the Government Code. The statement of facts recited that petitioner was included among those laid off for the reason that he was ''the person having the lowest combined score for efficiency and seniority among other employees in said class''; and that ''in lieu of being laid off from State service the appellant exercised the option of being demoted to a position in his former class of physician and surgeon, which position he now holds.''

In his petition for writ of mandate, based upon the foregoing facts, appellant alleges as a first cause of action that inasmuch as he had been appointed to and accepted the position at the Stockton Hospital on October 4, 1941, and had actually served in the position for ''a period of time,'' the subsequent cancellation of his appointment was invalid; and that he was entitled to return to and be reinstated to such position and not subject to the layoff procedure; that he had filed an appeal with the Personnel Board in accordance with section 19541 of the Government Code, protesting his layoff, which appeal, and also a petition for rehearing, had been denied. He prayed that the cancellation of his appointment by the board be declared void, that he be reinstated to his position, and that respondents certify, approve and pay his claim for the difference in salary between what he had received since his layoff and what he would have received as Assistant Medical Director had he not been laid off. In a

second cause of action he alleged that he was the first person appointed to fill the vacancy and was not subject to layoff procedure under sections 19530-19535 of the Government Code.

An alternative writ issued, whereupon respondents answered by way of a general demurrer to the petition. The cause was submitted on the record, the trial court rendered an opinion and entered judgment for respondents denying a peremptory writ of mandate. This appeal followed.

Determination of the cause rests primarily upon the effectiveness of petitioner's appointment on October 4, 1941, and the validity of the order of November 16, 1942, cancelling same. The record shows that the cancellation was based upon an opinion of the attorney general (NS4427) rendered in July, 1942, which stated:

"It is the view of this office that under the existing statutory provisions a permanent civil service employee, absent from duties on military leave of absence and on active duty with the United States Armed forces, cannot be appointed to some other civil service position for which he may have qualified either before or after he obtained military leave and entered into active service with the armed forces.

"Appointment to a civil service position necessarily implies and requires an actual acceptance of such appointment by the entering into the state service and performance of the duties. Since it is physically impossible for a person in the armed forces to actually accept an appointment to a position and enter into a performance of the duties thereof, such person cannot be appointed to such civil service position.

"There is still another reason that compels this conclusion. The rights of one on a leave of absence are purely statutory, and hence the statutory provisions are the measure of the right. In examining the statutes quoted above we find only two of the sections dealing with the right to promotion. Section 395 of the Military and Veterans Code provides in substance, among other things, that no state employee shall be prejudiced by reason of such absence (to perform military duty) with reference to promotion. Section 96.5 of the Civil Service Act provides that any person who holds a civil service position with permanent status and whose name appears on a promotional list and who enters the armed forces of the United States before such list is abolished shall retain his

place on such list until the expiration of three years from the termination of his services with the armed forces, provided that he has been certified to the position during such service. It is further provided that if the list is abolished and a new one prepared such person shall be placed on the list in the order in which he appeared on the former list and at the same place. Section 395 of the Military and Veterans Code is general, whereas Section 96.5 of the Civil Service Act is specific, and, therefore, the latter must prevail. The extent of the employee's right is measured by the terms of Section 96.5, which grants only the right of retention of his name on a promotional list, and, therefore, the employee in question cannot be appointed to another position while on leave of absence to perform military duty.''

A similar conclusion was expressed in subsequent opinions of that official.

Sections 395 and 395.5 of the Military and Veterans Code, which were in effect in 1941, provide:

''Section 395. Absence of public officers and employees on military or naval duty.

'' [Right of state, county, city or district officer or employee to absent himself from duties or service.] Every officer and employee of the State . . . who is a member of the National Guard or Naval Militia, or a member of the reserve corps or force in the Federal military, naval, or marine service, shall be entitled to absent himself from his duties or service while engaged in the performance of ordered military or naval duty and while going to and returning from such duty.

'' [Absentee not to lose vacation or holiday privilege, or be prejudiced as to promotion, etc.] If he has been in the service of the State or of any one of the political subdivisions enumerated in this section for a period of not less than one year prior to the date upon which his absence begins, no such officer or employee shall be subjected by any person directly or indirectly by reason of such absence to any loss or diminution of vacation or holiday privilege or be prejudiced by reason of such absence with reference to promotion or continuance in office, employment, reappointment to office, or reemployment.

'' [Salary or compensation during absence.] During the absence of any such officer or employee, while engaged in the performance of ordered military or naval duty as a member of the National Guard, Naval Militia, or reserve corps or force in the Federal military, naval, or marine service, he shall

receive his salary or compensation as such officer or employee, if the period of such absence in any calendar year does not exceed thirty days and if he has been in the service of the State or of any one of the political subdivisions enumerated in this section for a period of not less than one year prior to the date upon which his absence begins.''

''Section 395.5. Retention of civil service rights by state officer or employee ordered on active duty in wartime: Reinstatement. Any officer or employee of the State having civil service status who is ordered on active duty in time of war shall retain all civil service rights to his position and shall be reinstated to such position upon application at any time within ninety days after the termination of such duty.''

Section 96.5 of the State Civil Service Act (Stats. 1941, ch. 400, p. 1685; Gen. Laws, 1941 Supp., Act 1404) reads:

''Any person who holds a position with permanent status and whose name appears on a departmental reemployment, general reemployment or promotional list and who enters the armed forces of the United States before such list upon which his name appears is abolished shall retain his place on such list until the expiration of three years from the termination of his service with the armed forces; provided, however, this section does not apply to any person who refuses to accept appointment to a position after certification thereto subsequent to his discharge from the armed forces, or who has not been certified during his service with the armed forces of the United States, or who is not discharged from the armed forces of the United States within two years after the effective date of this section.

''No promotional lists upon which the names of such persons appear may be abolished, except that they may be replaced by more recently prepared lists if the names of such persons are placed in the order in which they appeared on the former list and at the same place as they appeared on said list.''

In 1943, the Legislature enacted section 96.6 of the Civil Service Act (Stats. 1943, ch. 395, pp. 1912-1913; 1 Deering's Gen. Laws, Act 1404), as follows:

''Any person away from State service under the provisions of Section 152.5, whose name appears on a promotional list and which name is retained on such list subject to the provisions of Section 96.5, shall have his name certified to fill any vacancy which may occur during the period his name is

retained on said list under said Section 96.5, and if it is the desire of an appointing power to appoint such person, he shall be so appointed to fill the position to take effect upon his return to State service within the time provided in Section 152.5.''

The trial court, in denying the petition for writ of mandate, rendered an opinion to the effect that since petitioner was on active duty with the Army when his appointment as Assistant Medical Director at the Stockton Hospital was made, petitioner was not in a position to accept same, and that his acceptance was merely a ''token acceptance,'' and was ineffective; but that the subsequent appointment to take effect upon his return from military service was valid, and that since, after the termination of his military service and his return to the position of physician and surgeon at Camarillo he was subsequently promoted to the position of Assistant Medical Director under the provisions of section 96.6, *supra,* his seniority rights should be considered as of that date.

Until the enactment of section 96.6 in 1943, there was no statutory provision for promotion of civil service employees during their absence while on active duty with the armed forces. Section 395, *supra,* merely provided that employees of state, etc., should be entitled to leaves for the purpose of performing military duty, and that they should not be prejudiced by reason of such absence with reference to promotion or continuance in office, etc. And section 395.5 provided that any such employee ordered to active duty in time of war should retain all civil service rights to his position and should be reinstated to such position upon application at any time within 90 days after termination of such duty, and section 96.5, *supra,* merely provided for the retention of names upon promotional lists during absences on military duty. Plainly, these enactments concern only the retention of rights already acquired and do not provide for the acquisition of new ones during absences on military duty. It was only after 1943, when the Legislature enacted section 96.6, that new rights might be acquired during such absences; and by that section rights to promotion of those whose names appeared on promotional lists were granted to the extent that the appointing power might, during such absences, make appointments to take effect upon the return of the appointee to state service. Prior to this enactment no statutory provision had been made for appointments during absences on

military service; and the provision of the 1941 enactment to the effect that names should be retained on promotional lists is not compatible with the notion that actual promotions and appointments might be made during such absences. If the making of such appointments during such absences was provided for under existing legislation, no need for the addition of section 96.6 would have arisen, unless it can be said that its purpose was to limit rights already existing, which it obviously was not.

In enacting section 96.5 the Legislature declared that it was an emergency measure to take effect immediately for the purpose of *retaining* to employees on active military duty rights already acquired. Also, the act of 1943 which included section 96.6, *supra*, was declared an emergency measure, it being recited as reason therefor that "conditions should be maintained as uniformly as possible for those who leave the State service and enter the military forces which is not true in the case of the possibilities of promotion and can only be made so by permitting as provided in this act the 'token' certification of persons on promotional list who have entered the armed forces. This uniformity should be established as soon as possible and therefore this act should go into effect immediately."

From the foregoing we conclude that the appointment of petitioner in 1941, during the time that he was on active duty with the United States military forces was ineffective and that the cancellation of same in 1942, was proper; and that it is of no significance that petitioner "accepted" the appointment, as he says he did, and performed the services of Assistant Medical Director at the Stockton Hospital for nine days. Obviously, when he did so it was with full knowledge that he was at the time, and would be indefinitely, on military duty, and that he could perform the duties at the hospital only during his limited military leave. And it was only because he happened to be on military duty near Stockton and that he was able to secure the short leave, that he was enabled to perform services as Assistant Medical Director at all. Had he been on foreign duty such performance would have been impossible. The enactment of section 96.6 apparently evidences a recognition of this fact. For if appointments made during military service could be made effective by service when on leave, a person fortunate enough to be stationed near the place to which he was appointed could obtain an advan-

tage over others who might be on foreign duty—an advantage which it cannot be presumed the Legislature intended should be enjoyed. Seniority rights should not be thus acquired.

The record seems to indicate that petitioner recognized the foregoing conclusion, and acted accordingly. For, as the statement of facts recites, on his return from military duty he was reinstated to his former position as physician and surgeon at Camarillo, ''and immediately thereafter his appointment as Assistant Medical Director, made on August 2, 1943, as aforesaid, was made effective, and he entered upon the performance of the duties thereof. . . .'' Only when layoffs were necessitated and he found himself perforce laid off because of lack of seniority did he choose to claim such rights under the former appointment which had been cancelled. Furthermore, the agreed statement recites that ''in lieu of being laid off from State service appellant exercised the option of being demoted to a position in his former class as physician and surgeon, which position he now holds.'' While in his brief appellant states that he did not in fact exercise that option we cannot on this appeal consider matters so asserted and outside the record.

Since we have concluded that appellant's original appointment in 1941 was ineffective and its cancellation proper, appellant's seniority rights must be held to date from his subsequent entry upon duty in October, 1945. The agreed statement of facts recites that on the day that he was laid off he ''was the person having the lowest combined score for efficiency and seniority among other employees in said class.'' We assume that by this statement appellant concedes that he was properly laid off unless he had seniority rights dating from October, 1941.

The judgment appealed from is affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied October 6, 1947.