PER CURIAM.
SUPREME COURT OF FLORIDA
Tallahassee
February 21, 1974
Honorable Reubin O’D. Askew
Governor
State of Florida
Tallahassee, Florida
Dear Governor Askew:
We have the honor to acknowledge your communication of January 22, 1974, requesting our advice pursuant to Section 1(c), Article IV, Constitution of Florida, F.S.A., relating to certain executive powers and duties.
Omitting the formal parts, your letter reads as follows:
“Under Section I of Article IV, Florida Constitution, it is my duty to take care that the laws be faithfully executed. Chapter 73-132, Laws of Florida (House Bill 1845), was enacted by the Florida Legislature during the extended regular session of 1973 and approved by me on June 7, 1973. The Act took effect immediately upon becoming law.
“Chapter 73-132, known as the Statewide Grand Jury Act, requires me to petition *474 in writing to the Supreme Court for an order empaneling a statewide grand jury whenever, for good and sufficient reason, I consider it to be in the public interest.
“In view of the likelihood of the need to seek the empaneling of a statewide grand jury in the near future and of the lack of clarity of certain provisions of the Statewide Grand Jury Act, I am in doubt as to my responsibilities with -regard to the faithful execution of the Statewide Grand Jury Act.
“I have the honor, therefore, to request your written opinion on the following questions:
“(1) Does a petition seeking empanelment of a statewide grand jury call for a judicial decision by this Court of such scope that later questions concerning Chapter 73-132, Laws of Florida, coming before the Court relating to the same grand jury raise issues concerning disqualification under Chapter 38, Florida Statutes, or constitutional requirements of due process?
“(2) If my petition sets forth facts which indicate that the scope of the statewide grand jury investigation is not limited to a particular region or section of the State, does the requirement in Section 906.07(2), of Chapter 73-132, that the jury be composed of no less than one grand juror from each congressional district violate constitutional requirements regarding nondiscriminatory selection of jurors ?”
Upon receipt of your communication, an Interlocutory Order was entered, announcing that the questions propounded were answerable, and soliciting the filing of briefs by interested parties. The questions will be answered seriatim.
Fla.Stat. § 906.03(1), F.S.A. provides in part:
“(1) Whenever the governor, for good and sufficient reason, deems it to be in the public interest to empanel a statewide grand jury, he may petition in writing to the supreme court for an order empaneling a statewide grand jury. The petition shall state the general crimes or wrongs to be inquired into and shall state that said crimes or wrongs are of multi-county nature. The supreme court may order the empaneling of a statewide grand jury, in accordance with the petition, for a term of twelve calendar months.”
The question is whether the action of this Court in ordering empanelment upon petition by the Governor constitutes involvement to such an extent as to jeopardize the impartiality necessary for appellate review of any matter raised by defendants indicted under the Act. We do not believe that an empaneling order would be grounds for disqualification. In so deciding, we are sensitive to the fact that there is nothing more vital in the administration of justice than perfect impartiality. State ex rel. Arnold v. Revels, 113 So.2d 218 (Fla.App.1959).
As we conceive it, this Court’s duty would be ministerial in nature, and the decision to empanel a statewide grand jury would involve no judgment relative to any potential defendants or any acts alleged to have occurred.
The grand jury system is a product both of common law and legislative enactment. Where the legislature chooses to vest in the Chief Magistrate the power to initiate a request for a statewide grand jury whenever, for good and sufficient reason, he deems it to be in the public interest, the judgment attached to the act is essentially his. As a check of this power this Court is charged with the responsibility of reviewing the empaneling petition to insure that it meets the statutory requirements. In the main, the requirements are that the petition shall state: 1) the general crimes or wrongs that are to be inquired into, limited to those matters enumerated in Fla. Stat. § 906.04, F.S.A.; 2) that the alleged *475 crimes or wrongs are multi-county in nature; 3) that the geographical scope of inquiry should be either regional or run throughout the entire state.
If a review of the petition on its face discloses fulfillment of these requirements, then the Court would order empanelment forthwith; no other course of action appears to he authorized by the statute. Our responsibility is similar to that contemplated by Fla.Stat. § 27.14, F.S.A., regarding assignments by the governor of a state attorney outside of his jurisdiction for a period in excess of sixty days in any one calendar year. The governor may make such an assignment “for any good and sufficient reason”, but it must be approved by order of the Supreme Court. In Finch v. Fitzpatrick, 254 So.2d 203 (Fla.1971) we discussed the governor’s authority, saying in part:
“It is the duty of the Governor under Fla.Const. F.S.A., art. IV, § 1(a) in the exercise of his executive power to ‘take care that the laws be faithfully executed.’ The exercise of this power and the performance of this duty are clearly essential to the orderly conduct of government and the execution of the laws of this State.

“The Governor is given broad authority to fulfill his duty in taking ‘care that the laws be faithfully executed’, and he should be required to do no more than make a general recitation as to his reasons for assigning a state attorney to another circuit.

“The Chief Executive has a broad discretion in determining ‘good and sufficient reason’ for assigning a state attorney to another circuit, and is not required to delineate in particularity his reason for the assignment.”
254 So.2d at 204, 205.
Would our performance of a ministerial act affect our ability to review potential appellate issues with impartiality? We think not. Our reading of Wilson v. Renfroe, 91 So.2d 857 (Fla.1956), and the cases cited therein, reinforces this conclusion. Nor do we find that on appeal a prospective litigant could suggest the disqualification of the Court, or any member thereof, on account of “interest” under Fla.Stat. § 38.02, F.S.A., unless on grounds other than the mere issuance of the empanelment order.
The second question relates to Fla. Stat. § 906.07(1) and (2), F.S.A., and the requirement in the latter subsection that, “[I]n selecting and empaneling the statewide grand jury in the manner prescribed herein the presiding judge shall select no less than one statewide grand juror from each Congressional District in the State”. We find this requirement to be in express conflict with the manner in which the jury panels are to be selected.
Under Fla.Stat. § 906.07(1), F.S.A., the chief judge of each judicial circuit shall cause to be compiled a list of persons certified for jury duty in each county in the circuit; thereafter, he is to select “by lot and at random” a list of eligible grand jurors from each county according to the formula of three such jurors for each 3,000 residents, or fraction thereof, in each county. The lists are then forwarded to the state courts administrator.
Under Fla.Stat. § 906.07(2), F.S.A., the above lists are to be certified and submitted to the judge selected by the chief justice as presiding judge for the statewide grand jury. The presiding judge shall then “by lot and at random” select and empanel the statewide grand jury.
“Lot” has been defined as a “determination by chance”, (Ballentine’s Law Dictionary 757, 1969) and “at random” has been defined as “Without any settled aim, purpose, or direction; left to chance; casual, or haphazard” (Ballentine’s, at 106). Further, our research generated by both the majority and dissenting opinions in Greater Loretta Imp. Ass’n v. State ex rel. *476 Boone, 234 So.2d 665 (Fla.1970), fully convinces us that “by lot and at random” means precisely that neither human reason, sagacity nor design can determine the result. Nonetheless, the statute provides that in selecting the jury “in the manner prescribed”, the presiding judge shall select “no less than one statewide grand juror from each Congressional District in the State”. The conflict is exacerbated when consideration is given to the fact that the same requirement is to apply to a regional grand jury.
Beyond the existence of conflicts, there lurks the potential for a more serious issue. Since Congressional Districts are delimited on a population basis, a requirement that no less than one grand juror be chosen from each District may be, in effect, a requirement that the statewide grand jury be empaneled on the basis of proportional population representation, rather than “by lot and at random”. In State v. Silva, 259 So.2d 153 (Fla.1972), we specifically held that prospective jurors must be selected at random, although residency itself was not discussed. Conceptions of due process and equal protection of the laws may possibly be offended by such a requirement, especially if there is no reasonable relationship between the legislative intent as expressed in Fla.Stat. § 906.02, F.S.A. and proportionate representation by population. If the legislative desire were to secure a dispersion of jurors, proportionate representation is not the sole possible approach; we note in passing that the two other states having statewide grand jury legislation attempt to guarantee some dispersion of jurors by limiting the number that can be chosen from any one county; see New Jersey Statutes, Title 2A:73A-4; Colorado Revised Statutes, § 78-8-3.
However, constitutional issues need not frame our answer to your second inquiry because we believe that rules of statutory construction may be applied to avoid these issues and still bring harmony to the statewide grand jury statute. The requirement ■that.no less than one statewide grand juror be selected from each Congressional District, whether for a regional or statewide jury, follows the requirement that the lists be derived from a “by lot and at random” selection.
The construction rule which should apply has been set out in Johnson v. State, 157 Fla. 685, 27 So.2d 276 (1946) at 282, as follows:
“[WJhere the last sentence in one section of a statute is plainly inconsistent with the preceding sentences of the same section and preceding sections which conform to the legislature’s obvious policy and intent such last sentence, if operative at all, must be so construed as to give'it effect consistent with such other sections and part of sections and with the policy they indicate.”
Following this rule, we would resolve the apparent conflict between the “by lot and at random” requirement and the subsequent Congressional District requirement by holding that the list of persons certified for jury duty in each county under Fla. Stat. § 906.07(1), F.S.A. must include members from each Congressional District at the outset, prior to the first “draw” by the chief judge. Whether the first “draw” produces potential grand jurors from each District within the county or not is irrelevant because that is a function of a “by lot and at random” selection. Practically speaking, the chief judge is responsible for determining whether the list of persons certified for jury duty in each county includes residents in each District which may be included in a county; this determination may be made simply by ascertaining if the jury duty list is drawn up in such a manner that persons from each District should appear on the list.
In summary, we advise you as follows:
1. This Court’s participation in granting an order empaneling a statewide grand jury would not affect the Court’s participation in the orderly appellate process.
*477 2. The requirement that the statewide grand jury be composed of at least one member from each Congressional District is merged into the random selection of jurors and has no independent effect; any order of this Court empaneling a statewide grand jury would be based upon this necessary construction.
Respectfully,
(s) Vassar E. Carlton Chief Justice
(s) E. K. Roberts_ Justice
(s) Richard W. Ervin Justice
(s) James C, Adkins, Jr. Justice
(s) Joseph A. Boyd, Jr. Justice
(s) David L. McCain Justice
(s) Hal P. Dekle_ Justice